UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sean P. Stipe, | : | Case No. 1:07CV0422 |
| | : | |
| Plaintiff | : | Judge James Gwin |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

      This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in his favor and defendant seeks final judgment upholding the decision below.

      Plaintiff's right to benefits under both programs is dependent upon a showing that he is disabled, as that term is defined in the Social Security Act. Disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months." 42 U.S.C. §§423(d)(1), 1383c(a). The programs differ with regard to other qualifying criteria. The disability benefits statute requires "fully insured" status, which focuses on the period of time the claimant has worked while covered by Social Security. The SSI

program focuses on income and resources as basic eligibility factors.[1]

Plaintiff applied for benefits on December 11, 2002, alleging an onset date of August 15, 2002. In an accompanying Disability Report-Adult the question "What are your disabling illnesses or injuries?" was answered "Depression, panic attacks, possible bipolar. Can't function in work environment, not able to think properly."

Upon denial of plaintiff's claims on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on June 6, 2006. Also testifying at that proceeding were a medical expert, Dr. Julian Kivowitz, and a vocational expert, Mr. Gregory Jones.[2]

When asked by his counsel if he had any physical limitations the plaintiff stated that he did not. He was then asked "what stands in your way of being a regular, normal, full-time employee," and he responded:

> A. I would have to say the biggest problem is reliability in the sense that I don't know how I'm going to be in the morning when I wake up. Sometimes I'm really anxious. I'll wake up in the middle of a panic attack, or I'll be really depressed and, you know, just unable to crawl out of bed, especially when I was trying to work for my brother, you know. I put forth that extra effort and just working all day, you know, day after day was just—it built up so much stress kind of mentally, hold myself together that I would constantly have to be taking breaks and getting away. And it just built to the point where I became unreliable because I couldn't—I couldn't mentally hold it together day to day to day to day. So, you know, I'm not good for Monday through Friday, you know, 8:00 to 5:00 or anything

---

[1] Because the plaintiff's fully insured status only extended to March 30, 2004 he would have to establish disability as of that terminal date to be awarded DIB. He would remain eligible for SSI if he was disabled any time after his application date.

[2] The hearing was conducted by video conference, with the plaintiff and his counsel in Cleveland, Ohio and the ALJ and the two expert witnesses in Los Angeles, California.

like that.

On July 6, 2006 the ALJ entered his opinion denying plaintiff's claims. That decision became defendant's final determination upon denial of review by the Appeals Council on December 19, 2006. The ALJ's "Findings," which represent the rationale of decision, were:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 30, 2004.

2. The claimant has not engaged in substantial gainful activity since his alleged onset of disability of August 15, 2002.

3. The claimant has the following "severe" impairments: bipolar disorder and anxiety disorder.

4. The claimant has no impairment that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant does not have any exertional limitations and retains the residual functional capacity to perform simple and moderately complex work activity that does not involve working around large crowds.

7. The claimant is able to return to his past relevant work as a food deliverer and house sitter.

8. The claimant is 34 years old, a "younger individual."

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. (20 CFR §§404.1520(g) and 416.920(g)).

In reaching his conclusion that the plaintiff is not disabled the ALJ looked to the testimony of Dr. Kivowitz which (after introducing himself) was:

Q. How would you characterize the claimant's mental condition?

A. Using the criteria used by the psychiatric profession, DSM IV, the primary diagnosis until he stopped would be alcohol abuse. The problem is I'm not sure when he stopped. I know—he said he stopped two years ago drinking heavily. On 8F-9 which is dated 9/15/05, it says he was sober. 8F-2, 11/9/05, the last drink was seven weeks ago. So I put it around September of '05, but I'm not positive of that. Anyhow, that's the primary diagnosis until he stopped. Secondary diagnosis at those times would be bipolar disorder. That's noted in 8F-2, 8F-10, 7F-3 and 5F-17. Second secondary diagnosis would be panic disorder with agoraphobia noted in 8F-2, 8F-10 and 5F-8. After he stopped, the diagnosis would be number one, affective disorder. The third one, bipolar syndrome. Second diagnosis would be–that's 12.04. Second diagnosis would be anxiety disorder, number 3, recurrent severe panic attacks. That's noted in 5F-68, I believe. That's the A criteria. A far as the B criteria goes, I put down activities of daily living, mild. I put down social limitations, moderate, and restriction would be that he has to work alone. He can't work with crowds. Crowds seem to trigger his panic attacks. For concentration limitations, I put down moderate. In 5F-8 it's noted he's able to concentrate except during panic attacks. And for episodes of deterioration, I put down insufficient evidence. So in summary, I think he has limitations, but doesn't quite meet a listing.

ALJ: Do you have any questions of the doctor, counsel?

ATTY: I'd like to ask the doctor whether he thinks he equals a listing.

ME: No, I don't.

ALJ: He just said that he doesn't think so.

ME: No, I don't think so.

ATTY: No, I don't have any questions.

4

The ALJ also gave credence to a consultative evaluation performed by a psychiatrist, Dr. Emil K. Ibrahim, in October 2005 upon referral of the Social Security authorities, who assigned the plaintiff a GAF of 60, annoting "moderate symptoms," including moderate difficulty in occupational functioning.  Dr. Ibrahim concluded:

Regarding related activities:

1. Ability to relate to others was fair.  The patient presented disheveled, malodorous, with poor hygiene and grooming; however he [was] cooperative.

2. Ability to understand tasks was adequate for simple and medium complex tasks.

3. Ability to maintain concentration was good.

4. Ability to withstand stress and pressure in day-to-day activities is affected by unemployment.

With regard to the last of these factors Dr. Ibrahim's report stated that the plaintiff had advised him that "He last worked five years ago."

Plaintiff challenges the ALJ's reliance on the testimony of Dr. Kivowitz on the basis that "Dr. Kivowitz's testimony was completely conclusory.  At no time during his testimony did he identify anything in the records that was consistent with his opinion."  The problem this Court has with this position is that the challenge to the sufficiency of/basis for Dr. Kivowitz's opinion should have been made by counsel at the evidentiary hearing upon examination of the witness.  Rather than doing so counsel passed on asking any questions of the doctor, and it is now to late to remedy that deficiency in the record.

Plaintiff's primary position on this appeal is that the ALJ erred in not accepting the opinion of the plaintiff's treating psychiatrist, Dr. Samer Alamir, who is associated with a public mental

5

health facility, The Nord Center, where the plaintiff is seen, and that the ALJ failed to give a good reason for not doing so, as required under the decision in Rogers v. Commissioner of Social Security, 486 F.3d 234 (6th Cir. 2007).

The evidence relied upon by the plaintiff is a Mental Functional Capacity Assessment completed by Dr. Amir for the Lorain County Human Services Department under date of December 19, 2002 and a Social Security form completed by the doctor under date of January 24, 2003.

The shortcoming with regard to this evidence is that both documents were completed by Dr. Alamir at a point where he had barely begun to treat the plaintiff. It appears from the form completed on January 4, 2003 that the plaintiff first saw Dr. Alamir on December 2, 2002. In addition, the form which Dr. Alamir filled out barely two weeks after meeting the plaintiff indicated the doctor's belief that the plaintiff would be unemployable "between 9 months and 11months," shorter than the period required by the Social Security Act, 42 U.S.C. §423(d)(1)(A), to establish disability. As the touchstone of the "treating physician rule" is that a physician who has treated a patient for a significant period has special insights into his/her patient's condition, so that his/her opinion, if supported by medical findings, is entitled to substantial deference, this Court cannot find that the ALJ erred in not granting such deference to an opinion expressed less than 60 days after Dr. Alamir first saw the plaintiff. What is noticeably absent from this record is any report from Dr. Alamir speaking to his views concerning the plaintiff's mental status as it relates to the plaintiff's ability to engage in any level of work activities proximal to the hearing date in June 2006, three and a half years after the doctor patient relationship began.

As regards the ALJ's assessment of the plaintiff's treatment history at The Nord Center, which is mostly notes of counseling sessions with an LSW (licensed social worker), Mr. John

Vitello, this Court cannot find that the ALJ's determination that such evidence does not compel the conclusion that the plaintiff is disabled was beyond the ALJ's zone of choice. There unquestionably is, as the ALJ found, a high degree of variability reflected in the notes pertaining to the plaintiff's condition. This Court, however, was struck by a note entered under date of August 24, 2005 in which under the heading "Goal Statement" was written "Client needs to find employment," but the heading "Goal has been discontinued, please comment on why" was checked off and the comment entered was "Client not interested in employment, applied for SSI."

Based upon all the foregoing, including the report of Ibrahim and the testimony of Dr. Kivowitz, this Court must conclude that the ALJ's decision is supported by substantial evidence. It is, accordingly recommended that final judgment be entered in defendant's favor.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:  December 5, 2007

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).