UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
SEAN P. STIPE, : CASE NO. 1:07-CV-00422
:
          Plaintiff, :
:
vs. : ORDER & OPINION
: [Resolving Docs. 13, 14, 15, 16.]
COMMISSIONER OF SOCIAL :
SECURITY, :
:
          Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, the Court must determine whether to reverse the Administrative Law Judge's denial of Plaintiff Sean P. Stipe's ("Stipe") claims for disability and supplemental security income benefits.

On February 16, 2007, the Clerk referred the matter to Magistrate Judge David S. Perelman for a Report and Recommendation. [Doc. 5.] On December 6, 2007, Magistrate Judge Perelman recommended that this Court deny the Plaintiff's requested relief and affirm the Defendant's final determination. [Doc. 15.]. On December 17, 2007, the Plaintiff timely objected to the Magistrate Judge's Report and Recommendation. [Doc. 16.]

For the reasons stated below, the Court **ADOPTS** Magistrate Judge Perelman's Report and Recommendation and **AFFIRMS** the decision of the Administrate Law Judge.

## I. Background

In December 2002, Plaintiff Stipe applied for supplemental security income and disability insurance benefits, claiming a disability onset date of August 15, 2002. [Doc. 15, at 2.] Following the state agency's denial of his claims, he requested an evidentiary hearing. *Id.* Administrate Law Judge ("ALJ") Charles L. Hall held the hearing on June 6, 2006. *Id.* The Plaintiff had counsel at that hearing and testified. *Id.* A medical expert, Dr. Julian Kivowitz, and a vocational expert, Gregory Jones, also attended the hearing and testified. *Id.*

On July 6, 2006, ALJ Hall entered a decision denying Stipe's claims. [Doc. 15, at 3.] The ALJ found that:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 30, 2004.
>
> 2. The claimant has not engaged in substantial gainful activity since his alleged onset of disability of August 15, 2002.
>
> 3. The claimant has the following "severe" impairments: bipolar disorder and anxiety disorder.
>
> 4. The claimant has no impairment that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The claimant does not have any exertional limitations and retains the residual functional capacity to perform simple and moderately complex work activity that does not involve working around large crowds.
>
> 7. The claimant is able to return to his past relevant work as a food deliverer and house sitter.[1]
>
> 8. The claimant is 34 years old, a "younger individual."

---

[1] In the ALJ's Statement of Decision, he finds that Stipe has severe impairments that "make it impossible for him to return to his former employment." [R, 15.] The Court views this statement as a mistake in light of the ALJ's findings elsewhere, such as here, that Stipe is able to return to his former employment. *See also* [R, 17.].

> 9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. (20 CFR §§ 404.1520(g) and 416.920(g)).

*Id.*; [R, 17-18.] This decision became final after the Appeals Council denied review on December 19, 2006. [Doc. 15, at 3.]

On February 15, 2007, Plaintiff Stipe instituted the present action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) of the Social Security Act ("the Act"), which provide for judicial review of any final decision by the Commissioner of Social Security denying disability or supplemental security income benefits. Plaintiff Stipe argued that the ALJ's "finding that Sean Stipe is not disabled is unlawful and not supported by substantial evidence." [Doc. 13, at 8.] He alleged two specific assignments of error in his brief on the merits: 1) "The ALJ erred in finding that the reports from the treating physician are not supported by the medical evidence or entitled to controlling weight," and 2) "The ALJ's finding that the hearing testimony of the Medical Expert Dr. Kivowitz is entitled to substantial weight is not supported by the evidence." [Doc. 13, at 9, 12.] The Defendant responded that the ALJ properly evaluated the Plaintiff's claims in determining "that, in spite of his mental impairments, Plaintiff retained the ability to perform simply and moderately complex work activity that did not involve working around large crowds." [Doc. 14, at 12.]

The Magistrate Judge addressed these arguments in his Report and Recommendation. [Doc. 15.] Plaintiff Stipe now objects to the Magistrate Judge's Report, saying that it upholds an ALJ decision that "relies upon a medical report by a non-examining government physician which is insufficient to support a denial of benefits and is contrary to the reports of the treating physician[]" and further, does so without identifying "good reason" to "give more weight to the hearing testimony than to the report of the treating psychiatrist." [Doc. 16, at 1, 3.]

**II. Legal Standard**

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which the parties object. 28 U.S.C. § 636(b)(1). Plaintiff Stipe objects to the Magistrate Judge's findings as they relate to the weight the ALJ allegedly gave the medical expert's hearing testimony versus the alleged weight granted to the treating psychiatrist's reports. [Doc. 16.] The Court will review these findings *de novo*.

This Court's review is limited to determining whether the ALJ's decision is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Put differently, it is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996). A court may not reverse, even if it would arrive at a different conclusion than the ALJ, if the decision is supported by substantial evidence. *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987). This Court may not review "the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984).

Nevertheless, even where "substantial evidence otherwise supports the decision of the Commissioner, . . . reversal is required [if] the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

### III. Analysis

With his objection, Plaintiff Stipe claims that the ALJ granted too little weight to the medical records of Stipe's treating psychiatrist, Dr. Alamir, and too much weight to the testimony of the non-examining medical expert, Dr. Kivowitz: "Dr. Alamir's opinion should be given more weight than the conclusory statements of the Medical Expert at the hearing." [Doc. 16, at 4.] With his objection, the Plaintiff challenges the ALJ's decision on procedural and substantive grounds. The Court will consider the procedural and substantive challenges separately and ultimately affirm the ALJ's decision.

### A. Procedural Challenge

The Plaintiff claims that ALJ Hall's decision "is contrary to the reports of [Stipe's] treating physician[]." [Doc. 16, at 1.] Because the Plaintiff alleges that the ALJ did not give "controlling weight" to the treating psychiatrist, he says the ALJ should have applied the factors found in 20 C.F.R. § 404.1527(d) and provided "good reasons" in his decision for the weight he gave to the "treating source's opinion." § 404.1527(d)(2). Plaintiff Stipe contends, "There is no good reason identified by the ALJ for his decision to give more weight to the hearing testimony than to the report of the treating psychiatrist." [Doc. 16, at 3.]

"In assessing the medical evidence supplied . . . , there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544). Section 404.1527(d) of the Code of Federal Regulations provides:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. 404.1527(d)(2).

"If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors . . . in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing § 404.1527(d)(2)). Further, the ALJ must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [the] treating source's opinion." § 404.1527(d)(2)). The Sixth Circuit describes this:

> [A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'

*Wilson*, 378 F.3d at 544 (citation omitted).

First, the Court finds that Dr. Alamir is a "treating source." "A physician qualifies as a treating source if the claimant sees [him] 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.' 20 C.F.R. § 404.1502." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). The record indicates that Dr. Samer Alamir, a psychiatrist at the Nord Mental Health Center ("Nord Center"), regularly treated Stipe with regard to his mental health problems from 2002 through 2006.[2] The record also indicates that the Rehabilitation Services Commission Bureau of Disability Determination referred to Stipe's "Professional" at the Nord Center, Dr. Alamir, as his "treatment source." [R, 169.] The Court further notes that no one contests this designation. Therefore, the Court finds that Dr. Alamir

---

[2] Dr. Alamir treated Plaintiff Stipe in partnership with John Vitello, a licensed social worker at the Nord Center. Because Dr. Alamir's reports include findings consistent with Vitello's, the Court will look to both's reports and need not analyze the differing weight that each warrants due to their different titles. *See* 20 C.F.R. § 404.1513(a).

is a "treating source" under the instant regulations.

Next, the Court looks to the ALJ's decision and his treatment of Dr. Alamir's reports. The ALJ said:

> In particular, the record shows that since December 2002, the claimant has received treatment from the Nord Center, where he was initially diagnosed with bipolar disorder, panic disorder with agoraphobia, and alcohol abuse. (Ex 5F) The claimant presented to Dr. Samer Alamin, M.D., with complaints of panic attacks triggered by crowds, but reported effective symptom control with pyschotropic medications.
>
> Upon a complete mental status examination, Dr. Alamin found the claimant appeared anxious and slightly disheveled, but demonstrated an ability to concentrate, good memory, organized thought processes, good judgment, and above average intelligence. The claimant denied any suicidal ideations, homicidal ideations, or delusions, and stated he is capable of getting along with others, but that he avoids crowds (Ex 5F).
>
> The claimant is monitored by a social worker at the Nord Center, whose notes reflect the claimant's ongoing reports of mental stability and decreased symptoms of panic attacks with only minor alterations in medications. (Exs 5F, 8F, 9F) Although the claimant's symptoms are noted to fluctuate over time, the great majority of records indicate the claimant is able to maintain general control over his symptoms and only occasionally experiences significant symptoms of anxiety and panic. . . .
>
> . . . However, the claimant's allegation of total disability is not substantiated by the objective medical evidence and is inconsistent with the claimant's own reports of stability and symptom control to his treating physician.

[Tr, 15, 16.]

The Plaintiff contends that the ALJ's decision is contrary to Dr. Alamir's reports and that the ALJ failed to explain the weight he assigned to Dr. Alamir's reports in violation of § 404.1527(d)(2). To support his argument that the ALJ diverges from Stipe's treating source's opinion, the Plaintiff draws attention to the references in Dr. Alamir and Vitello's reports involving Stipe's difficulties in maintaining employment due to his anxiety and panic attacks.

The Court agrees that some of the Nord Center reports indicate Stipe's struggle to maintain employment because of his mental health issues. Dr. Alamir's psychiatric evaluation of Stipe on

December 19, 2002 states, "He hasn't held a job since 2000 due to his anxiety and panic attacks." [R, 256.] On January 24, 2003, Dr. Alamir reported that Stipe would "poorly" react to the "pressures, in work settings or elsewhere, involved in simple and routine, or repetitive, tasks" and that he has "problems with crowds/in movie theatres." [R, 248.] On February 28, 2003, Vitello similarly commented, "Client would like to work but his Panic Disorder prevents him." [R, 243.] On July 2, 2003, after reporting that Stipe had a new job, Dr. Alamir wrote, "He stopped working due to another panic attack." [R, 234.] In December 2003, Dr. Alamir again remarked, "His panic attacks and anxiety prevented him from keeping a job." [R, 213.] While the Court finds this language compelling, the Court may not reverse if the ALJ's decision is supported by substantial evidence. *Siterlet*, 823 F.2d at 920.

Despite the reports' language cited above, the Court does not agree with the Plaintiff's premise that the ALJ's finding of no disability is necessarily contrary to the treating source's reports when viewed as a whole. For example, the same December 2002 report that Plaintiff Stipe relies on to prove that he is "extremely limited" in his ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" is the same report in which Dr. Alamir checks the box indicating these limitations are expected to last 9-11 months (falling short of the definition of "disability" in 42 U.S.C. § 423(d)(1)(A)), rather than the box for 12 months or more (that meets the duration requirement of "disability"). [R, 119-20.] Thus, it is not clear that the Nord Center treatment providers felt Stipe was disabled as defined under the regulations. In fact, while some of their reports indicate the job challenges mentioned above, other reports show the Plaintiff's progress and stability over time. *E.g.*, [R, 174, 182, 192, 194, 212, 216, 308, 315.].

Most notably, the Court draws attention to the Nord Center's repeated encouragement to Stipe to gain and maintain employment, suggesting that Dr. Alamir and Vitello believed working to be an important short and long term goal for Stipe. *E.g.*, [R, 194, 236, 291, 305.] Some reports indicate employment-related goals for Stipe. *E.g.*, [R, 236.] Other reports show the Nord Center's offers of vocational services to Stipe. *E.g.*, [R, 315.] Still others indicate his treatment providers' suggestion to change his employment search strategy toward more solitary-oriented work. [R, 296.] As a whole, the reports indicate that Dr. Alamir and Vitello were consistently inquiring into and encouraging Stipe's employment progress.[3/]

The Court also notes, as the Plaintiff concedes in his objection [Doc. 16, at 4.] and the Magistrate Judge finds in his Report [Doc. 15, at 6.], that much of the language Stipe points to is from early in his treatment with Dr. Alamir in 2002 and 2003. The regulations provide that "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." § 404.1527(d)(2)(i). This policy suggests that reports from earlier in the psychiatrist-patient relationship should receive less weight than those from later in the relationship. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant . . . .") As the Magistrate Judge stated, "What is noticeably absent from this record is any report from Dr. Alamir speaking to his views concerning the plaintiff's mental status as it relates to the plaintiff's ability to engage in any level of work activities proximal to the hearing date in June 2006, three and a half years after the doctor patient relationship began."

---

[3/] The Court agrees with the Magistrate Judge's suspicion emerging from the report indicating that Stipe was no longer interested in employment because he had applied for SSI. [R, 291.]

[Doc. 15, at 6.]

The Court finds that the ALJ considered the Nord Center's reports as a whole when it stated, "Although the claimant's symptoms are noted to fluctuate over time, the great majority of records indicate the claimant is able to maintain general control over his symptoms and only occasionally experiences significant symptoms of anxiety and panic." [R, 16.] While the Court finds that the ALJ could have more openly acknowledged and addressed the evidence relating to these "significant symptoms of anxiety and panic" that the Plaintiff draws attention to, the Court cannot find that the ALJ acted contrary to the treating psychiatrist's reports upon such a variable record of the Plaintiff's symptoms. *See Richardson*, 402 U.S. at 399 (noting that the trier of fact has the duty to decide conflicts within the evidence). Further, the Court cannot find that the ALJ failed to adequately consider Dr. Alamir's reports. *See Barker*, 40 F.3d at 794 (finding that an examining doctor's opinion was "neither ignored nor rejected by the [ALJ]" and that to the extent there were discrepancies in the evidence between the doctors, "they were mainly differences of degree and not of kind").

Because the Court finds that a "reasonable mind" could find the ALJ's decision largely consistent with the treating psychiatrist's reports when viewed as a whole, the Court also finds that the ALJ did not violate the regulations and Sixth Circuit precedent by failing to apply the relevant factors and "give good reasons" for the weight he assigned to Dr. Alamir's opinion as instructed in § 404.1527(d)(2). Rather, the Court finds that this case more closely resembles the hypothetical case that the *Wilson* court excepted from its holding: "There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant" what weight the ALJ formally grants to the treating source's opinion and the failure to explain such weight. *Wilson*, 378 F.3d at 547.

**B. Substantive Challenge**

With his objection, the Plantiff also argues that the ALJ's finding that the Plaintiff is not "disabled" is not supported by substantial evidence because the ALJ's reliance on Dr. Kivowitz's testimony is misplaced.

"Disability" is defined under the Act as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Court finds that there is substantial evidence to support the ALJ's finding that Stipe is not disabled as defined in the Social Security Act. As described above, the Court finds that Dr. Alamir's reports, when viewed as a whole, are reasonably considered consistent with the ALJ's findings. Further, the Magistrate Judge correctly cited the testimony of Dr. Kivowitz and the report of Dr. Ibrahim as further evidence in the record supporting the ALJ's findings. [Doc. 15, at 4-5.]

With his objection, the Plaintiff does not contest the ALJ's reliance on Dr. Ibrahim's report[4], but he does challenge ALJ Hall's use of Dr. Kivowitz's testimony: "The problem with this statement is that Dr. Kivowitz's testimony was completely conclusory." [Doc. 16, at 2.]

The ALJ said the following regarding Dr. Kivowitz's testimony:

Dr. Kivowitz opined that the claimant's primary diagnosis alcohol abuse with a secondary diagnosis of bipolar disorder with agoraphobia, depending on when the claimant stopped abusing alcohol. However, considering the claimant's symptoms as reflected in the medical record, Dr. Kivowitz stated the claimant's mental disorders do not meet or equal the criteria of the listed impairments, but do cause limitations. Specifically, Dr. Kivowitz assessed the claimant as mildly limited in his ability to perform activities of daily living, moderately limited in his ability to maintain social functioning in that he cannot work with large crowds, which appear

---

[4] Nor does the Plaintiff point to other conflicting evidence in the record. This is because the remainder of the record is consistent with the ALJ's conclusion. *See e.g.* R. 167 (summary of Dr. Williams's findings that are also consistent with the ALJ's conclusion of no disability).

>to exacerbate his feelings of panic, and moderately limited in his ability to maintain concentration, persistence or pace in that his symptoms of panic will likely reduce this ability to concentrate.
>
>The undersigned finds Dr. Kivowitz's testimony consistent with the available medical evidence . . . .

[R, 15.]

With his objection, the Plaintiff repeats two critiques of Dr. Kivowitz's testimony: 1) he testified that Stipe's primary diagnosis (before ceasing drinking) was alcohol abuse without any supporting authority; and 2) he testified to a significant change in Stipe's functioning after he stopped drinking, but could not identify when that change took place. [Doc. 16, at 2.]

While the record is unclear as to whether "alcohol abuse" should be categorized as Stipe's *primary* diagnosis before he ceased drinking, the record is clear that Dr. Alamir and others diagnosed Stipe with alcohol abuse among his other mental health diagnoses.  In his reports, Dr. Alamir consistently listed "alcohol abuse" or "R/O [Rule Out] alcohol abuse" as one of Stipe's diagnoses. *E.g.*, [R, 248, 256, 280, 288.].  The reports also indicate that Stipe's treatment providers discussed his alcohol usage with him. [R, 212, 219.] Further, Dr. Ibrahim confirmed Stipe's alcohol abuse diagnosis based on his review of Stipe's records.  [R, 276.]  Finally, Stipe himself admitted to a history of alcohol abuse at the hearing.  [R, 342.]  He testified that he drank twelve beers per day, five days per week up until three to four years before the 2006 hearing, and he did not reduce his alcohol intake to three beers per week until 2004. *Id.*  This evidence of alcohol abuse explains the ALJ's statement that he was "unable to separate [Stipe's] reported symptoms from his substance abuse" during his period of heavy drinking.  [R, 16.]

Further, the Court finds that the ALJ's decision does not turn on whether alcohol abuse was Stipe's primary or secondary diagnosis nor on whether Stipe underwent a significant change in functioning upon his cessation of drinking.  Rather, the ALJ was more concerned with Stipe's

alcohol abuse as *a* diagnosis that made it difficult for him to separate out his reported symptoms from the substance abuse.  [R, 16.]  The ALJ also makes no distinction between the work-related limitations Stipe faced before and after he ceased drinking, suggesting that the limitations during both periods were not significant enough to meet the Act's definition of "disability."  With his objection, the Plaintiff does not challenge these parts of the ALJ's analysis; instead, it points to alleged weaknesses in Dr. Kivowitz's testimony that appear peripheral to the ALJ's ultimate decision.

Therefore, the Court rejects the Plaintiff's two critiques of Dr. Kivowitz's testimony that form the basis of his objection to the Magistrate Judge's Report and Recommendation.[5]

### III. Conclusion

For the reasons stated above, the Court **ADOPTS** Magistrate Judge Perelman's Report and Recommendation and **AFFIRMS** the decision of the Administrate Law Judge.

IT IS SO ORDERED.

Dated: January 22, 2008
s/        *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[5] The Plaintiff offers a final peripheral objection saying that the Magistrate Judge's Report "fails to determine the sufficiency of the ALJ's decision based upon the reasoning in the decision itself."  [Doc. 16, at 1-2.]  The Court rejects this argument as it is entitled to look to the entire record to determine whether there is substantial evidence to support the ALJ's decision.  See *Heston v. Comm'r of Social Sec.*, 245 F.3d 528, 535 ("The court may review [a] report, in its consideration of the record as a whole, to determine if the ALJ's decision was based upon substantial evidence, even if the ALJ failed to cite the report in its conclusion.")